ST. CHARLES NATIONAL BANK, Plaintiff-Appellee, *v.* LeROY FORD, Defendant-Appellant.

Second District (2nd Division)   No. 75-288

Opinion filed June 16, 1976.

Peter M. Donat, of Donat & Donat, of Batavia, for appellant.

David G. Neri, of St. Charles, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This was a civil action brought by the plaintiff, St. Charles National Bank against defendant LeRoy Ford based on five promissory notes signed by the defendant. Summary judgment was given by the Circuit Court of Kane County against defendant.

The defendant, LeRoy Ford, wished to buy into a business known as R and S Sheet Metal Company, then owned by one Russell Dalrymple. Mr. Dalrymple was at that time in financial trouble, and the plaintiff, the St. Charles National Bank, was contemplating taking action upon the notes of Mr. Russell Dalrymple, then being held by the plaintiff bank. On April 1, 1974, the defendant, Ford, and Russell Dalrymple met with William Birtwistle, vice-president and trust officer of the St. Charles National Bank. At that time, the defendant, Ford, represented to Mr. Birtwistle that he owned a home valued at $60,000 and further that he was to receive approximately $80,000 in the near future for the sale of his interest in a trucking firm. Further, he informed Mr. Birtwistle that he wished to purchase a half interest in the R and S Sheet Metal Company, and that an attorney was in the process of drawing up the partnership papers, and that to induce the bank to preclude any action that was being contemplated in regard to the notes of Russell Dalrymple, Ford would sign the notes of Dalrymple as they came due, to insure their payment. This was agreeable to Mr. Birtwistle, who then approved a loan of $2,000 in the form of note UI 9490, which was signed by defendant Ford and

Russell Dalrymple. Thereafter, the defendant, signed the other notes. On April 29, 1974, defendant, Ford, requested a further loan of $2,000 from the plaintiff, the St. Charles National Bank. The loan was extended in the form of note UI 9647, in the amount of $2,000, signed by the defendant, and Russell Dalrymple. Subsequently, it appears that the partnership between the defendant and Russell Dalrymple, did not materialize, that there was a falling out between them. Numerous conferences were held at the bank concerning the payment of the notes. After a period of time, it appeared to the plaintiff, bank, that the defendant would not honor his signature on the above stated notes, and therefore on November 7, 1974, the plaintiff filed a complaint against the defendant, which alleged that the defendant signed the notes contained in the complaint, that the plaintiff was the owner and holder of notes, that the notes were past due, and prayed judgment in the amount of $8,150.

Thereafter, the defendant answered the above-mentioned complaint and denied all the allegations of the complaint except admitting the paragraph stating that the notes were marked as exhibits, and the paragraph which stated that the plaintiff was the owner and holder of the notes. The defendant's answer also alleged that he received no consideration for the notes, and that the defendant signed only as an accommodation party.

Following defendant's answer, the plaintiff submitted a motion for summary judgment, which included copies of the notes, complaint and answer, along with a supporting affidavit of Mr. William Birtwistle, officer of the plaintiff bank. Plaintiff's motion stated there was no genuine issue as to certain facts: these facts being that the action was on certain notes, signed by the defendant, which were past due; that the defendant admitted signing the notes; that the defendant states and admits he is an accommodation party; that defendant received consideration, but regardless, lack of consideration would be no defense of accommodating party, and that these facts establish as a matter of law the defendant has no defense to the action. Mr. Birtwistle's supporting affidavit stated that on April 1, 1974, the defendant, LeRoy Ford, along with Mr. Russell Dalrymple, met with William Birtwistle at the bank, and that the defendant said that he was buying into a business to become a partner with Mr. Dalrymple, and that an attorney was in the process of drawing up the papers. The affidavit further states the defendant would sign the notes of Mr. Dalrymple as they came due, so as to preclude the bank foreclosure of the notes, and that the defendant did sign said notes.

Thereafter the defendant submitted unverified written objections to the plaintiff's motion for summary judgment, and an affidavit. The objections listed the facts that were not contested as being the notes that were in issue; that they were past due; that the defendant signed them, and that he

signed as an accommodation party. Further, defendant's objection stated the additional fact that on April 1, 1974, the defendant, Mr. Dalrymple, and Mr. Birtwistle met at the bank, and the defendant stated that he would sign the notes of Mr. Dalrymple as they became due; that he was going to buy into a business, and an attorney was supposed to draw the papers, but that he did not sign the notes as they came due, but signed them on that day at the bank. Further, that the defendant was misled as to the present notes of Mr. Dalrymple, as he was only told of and led to believe that there were only four notes that he signed at the time—while Mr. Dalrymple knew he had present notes at the St. Charles National Bank of at least $16,000, that if Mr. Birtwistle didn't know of all Mr. Dalrymple's notes, he should have known about them, and that the defendant was misled at the time he signed the notes. Hearing was held, thereafter, and on April 24, 1975, the motion for summary judgment was granted by the court, which found for the plaintiff and against the defendant in the sum of $8,000 plus interest and costs, and judgment was entered thereon, from which this appeal is taken.

It was formerly the rule that the signature of a party to an instrument after its execution has been completed by delivery and the entire consideration has passed between the original parties, that is, the undertaking of one not a party to the original transaction who signs in pursuance of some subsequent arrangement, is a new and independent contract, and, to be binding, must be supported by a new and independent consideration from that of the original contract. This rule applied to one who subsequently signs as surety, guarantor, indorser or comaker. 11 Am. Jur. 2d *Bills and Notes* §240; (1963) 28 Ill. L. & Pr. *Negotiable Instruments* §51 (1957).

■■ Under the Uniform Commercial Code, section 3—415(2), the obligation of an accommodation party is supported by any consideration for which the instrument was taken before it is due. "[This] is intended to change occasional decisions holding that there is no sufficient consideration where an accommodation party signs a note after it is in the hands of a holder who has given value. The party is liable to the holder in such a case even though there is no extension of time or other concession." (Comment 3 to Uniform Commercial Code, Ill. Ann. Stat., ch. 26, §3—415, at 302 (Smith-Hurd 1963).) This is consistent with the provision as to antecedent obligations as consideration (section 3—408).

Section 3—408 provides in pertinent part:

> "Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (Section 3—305), *except that no consideration is necessary for an instrument or obligation thereon given * * * as security for an antecedent obligation* of any kind. * * * (Emphasis supplied.)

"The 'except' clause is intended to remove the difficulties which have arisen where a note or a draft, or an indorsement of either, is given as payment or as security for a debt already owed by the party giving it or by a third person. The provision is intended to change the result of decisions holding that where no extension of time or other concession is given by the creditor the new obligation fails for lack of legal consideration." Uniform Commercial Code Comment, Ill. Ann. Stat., ch. 26, §3—408, at 261 (Smith-Hurd 1963).

■■ It should be apparent that under the Commercial Code the obligation of defendant Ford is supported by the monetary consideration given Dalrymple. It is immaterial whether Ford signed all the notes on April 1 or as they became due.

The defendant's argument that there was a material misrepresentation in that he was misled as to the number and amount of the notes owed by Dalrymple is likewise without merit.

■■ As a general rule, fraud practiced by the debtor upon the surety does not affect the liability of the surety to the creditor, unless the creditor was a party to the wrongdoing or concealed material facts from the surety when it was his duty to disclose them. 74 Am. Jur. 2d *Suretyship* §133 (1974); Restatement of Security §119 (1941); Annot., 71 A.L.R. 1278 (1931); 72 C.J.S. *Principal and Surety* §75c (1951).

The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction, although it has been said that the creditor does not stand as a fiduciary in his relation to the surety. 74 Am. Jur. 2d *Suretyship* §127 (1974).

There is nothing in the mere nature of the contract of suretyship itself which requires the obligee to disclose to the proposed surety all the material facts affecting the risk. There must be a duty on the part of the obligee to make the disclosure; in the absence of such a duty in the circumstances of the particular case, the surety will not be released merely because he did not have the information which the obligee possessed. 74 Am. Jur. 2d *Suretyship* §128 (1974).

If the creditor knows that the surety is acting on a belief that there are no unusual circumstances by which his risk is materially increased, whereas to the knowledge of the creditor, there are such circumstances, and he has opportunity to make them known, good faith and fair dealing demand that there should be a full disclosure if the surety is to be held liable. (Restatement of Security §124 (1941).) But while the obligee must act in entire good faith, the surety has no right ordinarily to rely for information upon the obligee's duty to make disclosure of all the facts affecting the risk, *but must himself make inquiry.* Particularly in cases, as here, in which the surety assumes the risk at the debtor's request, rather than at the creditor's, the creditor may reasonably assume that the surety

will acquire from the debtor himself all information which it reasonably believes to be relevant to the risk. 74 Am. Jur. 2d *Suretyship* §130 (1974); Annot., 8 A.L.R. 1485, 1495 (1920); 72 C.J.S. *Principal and Surety* §77b (1951); *Swisher v. Fidelity & Deposit Co.*, 164 Ill. App. 243, 248; see *Roper v. Trustees of Sangamon Lodge No. 9, I.O.O.F.*, 91 Ill. 518, 521, where the court said, "But mere failure to communicate the fact in such a case does not amount to bad faith."

■■ Under the rule that a summary judgment may be granted where there is no genuine issue of material fact, and, conversely, that it may not be granted where there is such an issue, it is a well-established general principle that a genuine issue of material fact is necessary in order to preclude a summary judgment. A material or genuine issue of fact which will preclude the granting of summary judgment for the plaintiff is raised when the facts sworn to by the defendant, are such as to constitute a legal defense. It must appear from defendant's affidavit that defendant has a defense which is sufficient in point of law. *(Great Atlantic & Pacific Tea Co. v. Town of Bremen*, 327 Ill. App. 393, 402; *Pefferle v. Prairie Mills, Inc.*, 72 Ill. App. 2d 440.) Affidavits in support of or in opposition to a motion for summary judgment shall " * * * set forth with particularity the facts upon which the claim, counterclaim, or defense is based; * * * shall not consist of conclusions but of facts admissible in evidence; * * *." Supreme Court Rule 191(a). Defendant's affidavit (pertinent to this issue) states only, "Further the four notes that I signed were the only notes of Mr. Dalrymple that I knew existed." This does not set forth a legal defense to plaintiff's claim. If the affirmative matters do not, as a matter of law, constitute a defense, they may be disregarded as surplusage. *People ex rel. Ames v. Marx*, 370 Ill. 264, 268.

We conclude that the trial court had before it in this record no genuine issue of a material fact which precluded summary judgment. Its judgment is affirmed.

Affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.