MAGNA BANK OF MADISON COUNTY, Plaintiff-Appellee, v. RALPH S. JAMESON, SR., *et al.*, Defendants-Appellants.

Fifth District   No. 5—91—0504

Opinion filed December 2, 1992.

Robert J. Sprague, of Sprague & Sprague, of Belleville, for appellants.

David L. Antognoli and Kevin J. Davidson, both of Bernard & Davidson, of Granite City, for appellee.

JUSTICE HENRY LEWIS delivered the opinion of the court:

This is an appeal from an order granting summary judgment in favor of Magna Bank of Madison County, an Illinois banking corporation, formerly known as Magna Bank of Granite City and First Granite City National Bank (hereinafter Magna Bank).

On January 24, 1986, plaintiff, Magna Bank, loaned $90,000 to Virgil and June LeGate. On February 5, 1988, Magna Bank loaned Virgil and June LeGate an additional $150,000. Thus, the $150,000 mortgage was subordinate to the $90,000 mortgage previously loaned by Magna Bank to the LeGates. The defendants, Ralph Jameson, Sr., Ralph Jameson, Jr., and their company, R & L Supply, executed a guaranty for the $150,000 note. Defendants executed the guaranty in order to enable the LeGates, who owned a plumbing contracting business, LeGate's Plumbing, to pay them the $94,750 that they owed to R & L Supply Company, a plumbing supplier. The guaranty agreement limited the defendants' liability to the amount that they received from the loan proceeds. According to the guaranty agreement, the defendants allowed Magna Bank to release the collateral for the loan without changing the defendants' liability.

Approximately two years after the guaranty was executed, the LeGates defaulted, and Magna Bank proceeded with this action. The complaint sought foreclosure of both mortgages as well as a judgment against the defendants in the event that a deficiency resulted on the second mortgage. After the bank foreclosed both mortgages, a deficiency of $61,098.06 remained. The material allegations of Magna Bank's complaint were admitted by the guarantors. The defendants, however, alleged various affirmative defenses. Among them is the allegation that Magna Bank's agent supplied the defendants with false information as to the identity of the collateral with the intention of inducing the defendants to execute the guaranty. Subsequently, the defendants added the following affirmative defenses: (1) that plaintiff breached its implied promise of good faith and fair dealing with defendants; (2) that plaintiff failed to notify defendants of facts which materially increased their risk beyond which they intended in executing the guaranty; and (3) that plaintiff concealed facts which were material to the guaranty, and had those facts been known, the defendants would not have entered into the guaranty agreement.

Magna Bank filed a motion for summary judgment with regard to the defendants' liability pursuant to the guaranty agreement. This motion was based upon an affidavit of its vice-president, Michael Kulier, and the deposition testimony of one of the defendants, Ralph Jameson, Jr. Jameson, Jr., testified that the defendants had negotiated the guaranty with Mr. Kulier and that none of the defendants had had previous dealings with Mr. Kulier or Magna Bank. Jameson, Jr., stated that he believed that the loan he was guaranteeing was secured by a mortgage on the LeGates' residence, although he could not remember who gave him that information. Jameson, Jr., admitted that

he did not know whether the loan would be secured by a first mortgage or a subordinate mortgage on the LeGates' real estate. Jameson, Jr., was aware, however, that the LeGates had previous liabilities to Magna Bank. Mr. Kulier's unrebutted affidavit stated that he had not represented to any of the defendants that the guaranty was or would be secured by a first mortgage on the LeGates' residence. On December 28, 1990, the trial court granted summary judgment in favor of Magna Bank against the defendants. Thereafter, the court entered judgment against the defendants in the amount of $61,098.06. On June 4, 1991, the defendants filed a post-trial motion. On June 27, 1991, the trial court denied the post-trial motion. This appeal followed.

Initially, defendants claim that the plaintiff breached the implied covenant of good faith and fair dealing and fraudulently concealed information from the defendants by failing to disclose the existence of the first mortgage to the defendants at the time they executed the guaranty. Further, defendants contend that plaintiff had a duty to disclose the existence of that mortgage. We disagree.

According to the defendants, they entered into the guaranty agreement with the understanding that the loan they guaranteed was secured by a first lien on the LeGates' residence. Defendants claim that Magna Bank was obviously aware that the note they guaranteed was subordinate to a first mortgage to Magna Bank yet chose not to inform them of that fact. Defendants further assert that they would not have executed the guaranty if Magna Bank had disclosed this fact. Based upon Magna Bank's nondisclosure, defendants seek a complete discharge from their obligations under the guaranties.

■ It is well-settled law in Illinois that a duty of good faith and fair dealing is implied in every contract, including guaranties. (*Continental Bank N.A. v. Everett* (N.D. Ill. 1991), 760 F. Supp. 713, 717; *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 989-90, 466 N.E.2d 958, 971; *Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 300, 287 N.E.2d 151, 154.) However, in general, no duty to bargain in good faith over the *terms* of a contract exists (*First National Bank v. Atlantic Tele-Network Co.* (7th Cir. 1991), 946 F.2d 516, 520) even though the parties can, and often do, impose such a duty. (See *Chase v. Consolidated Foods Corp.* (7th Cir. 1984), 744 F.2d 566, 571; *Channel Home Centers, Division of Grace Retail Corp. v. Grossman* (3d Cir. 1986), 795 F.2d 291, 298-99.) Therefore, "[t]he duty of good faith is weak in the formation stage of a contract, if indeed it can be said to exist at all"; once a contract is actually

formed, the duty of good-faith *performance* enters the picture. *First National Bank*, 946 F.2d at 520.

In light of the foregoing principles, we believe that no breach of the implied covenant of good faith and fair dealing occurred here where Magna Bank allegedly failed to disclose facts prior to the formation of the guaranty contract. This covenant does not exist until a contractual relationship exists. The defendants have not claimed that the alleged bad conduct occurred after formation of the contract; therefore, the trial court properly concluded that this affirmative defense did not preclude the granting of summary judgment. Thus, there was no good-faith violation on the part of Magna Bank by failing to apprise the defendants of information that it could reasonably assume was already known to them. (*McLean County Bank v. Brokaw* (1988), 119 Ill. 2d 405, 417, 519 N.E.2d 453, 459.) The prior mortgage was a matter of public record.

"In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak." (*Lidecker v. Kendall College* (1990), 194 Ill. App. 3d 309, 317, 550 N.E.2d 1121, 1126.) There is no duty to speak absent a fiduciary or other legal relationship between the parties. (*Warner v. Lucas* (1989), 185 Ill. App. 3d 351, 355, 541 N.E.2d 705, 708.) However, it is true that a fiduciary relationship can exist between a guarantor and creditor under certain circumstances. (*Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 424, 487 N.E.2d 758, 763.) As a matter of law, the relationship between a guarantor and creditor is a debtor-creditor relationship rather than a fiduciary relationship. *Santa Claus Industries, Inc. v. First National Bank* (1991), 216 Ill. App. 3d 231, 238, 576 N.E.2d 326, 330; *Farmer City State Bank*, 139 Ill. App. 3d at 423, 487 N.E.2d at 763; see *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d 926 (holding that a guarantor is a debtor within the meaning of article 9 of the Uniform Commercial Code).

The burden of proving that a fiduciary relationship exists lies with the party seeking relief. (*Santa Claus*, 216 Ill. App. 3d at 238, 576 N.E.2d at 331; *Farmer City*, 139 Ill. App. 3d at 424, 487 N.E.2d at 763.) If the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence. (*Farmer City*, 139 Ill. App. 3d at 424, 487 N.E.2d at 763.) Thus, the party seeking to prove a fiduciary relationship must show that he placed trust and confidence in the other so that the latter gained influence and super-

iority over him. (*Santa Claus*, 216 Ill. App. 3d at 238, 576 N.E.2d at 331; *Farmer City*, 139 Ill. App. 3d at 424, 487 N.E.2d at 763.) The degree of trust and confidence can be established by the following factors: degree of kinship, age disparity, health, mental condition, education, business experience between the parties, and the extent of the reliance. *Santa Claus*, 216 Ill. App. 3d at 238, 576 N.E.2d at 331; *Farmer City*, 139 Ill. App. 3d at 424, 487 N.E.2d at 763.

■ In the case at bar, defendants failed to plead any facts showing that any of the above-mentioned factors were present. Again we reiterate that a fiduciary relationship does not exist as a matter of law between a guarantor and a creditor. (*Farmer City*, 139 Ill. App. 3d at 424, 487 N.E.2d at 764.) Even though such a relationship can exist between a guarantor and a creditor, we find that the defendants here failed to allege any facts which would give rise to such duty. In fact, defendants admit that they had no prior relationship with Magna Bank or its officers. Further, defendants admit that they failed to inquire as to whether the loan that they had guaranteed would be secured by a first mortgage. Therefore, defendants have failed to state a fraudulent concealment claim based upon a fiduciary relationship.

■ The defendants contend that section 124 of the Restatement of Security (1941) supports the duty of disclosure. We disagree. In both *McLean County Bank* (119 Ill. 2d at 417, 519 N.E.2d at 458), and *St. Charles National Bank v. Ford* (1976), 39 Ill. App. 3d 291, 295, 349 N.E.2d 430, 434, the court relied on section 124 of the Restatement of Security and stated that it is a defense in a guaranty contract if the creditor (1) knows facts that materially increase the guarantor's risk beyond that which the creditor has reason to believe the guarantor intends to assume and (2) fails to notify the guarantor of such facts which the creditor may reasonably believe are unknown to the guarantor. Thus, this is a two-pronged test. However, Comment *b* to section 124 states: "It does not place any burden on the creditor to investigate for the surety's benefit. It does not require the creditor to take any unusual steps to assure himself that the surety is acquainted with facts that he may assume are known to both of them." (Restatement of Security §124, Comment *b*, at 328 (1941); *McLean County Bank*, 119 Ill. 2d at 417, 519 N.E.2d at 458.) Thus, it is clear that the creditor is entitled to assume that the surety is aware of all material facts. In *St. Charles National Bank* (39 Ill. App. 3d at 295, 349 N.E.2d at 434), the court determined that, particularly in cases where the surety assumes the risk at the debtor's request rather than at the creditor's request, the creditor may assume that the surety will acquire all of the information relevant to the risk from

the debtor. That is precisely what occurred in the case at bar. Hence, it is apparent that Magna Bank was entitled to assume that the defendants were aware of the prior encumbrance. In fact, the mortgage was a matter of public record, and the defendants knew that the debtor had preexisting obligations to Magna Bank. The defendants have failed to prove the first prong of the test; therefore, the defendants were unable to show that a duty of disclosure existed under section 124 of the Restatement of Security.

■■ Defendants further claim that they should be relieved of liability because Magna Bank's agent made misrepresentations to them at the time the guaranty was executed. In order to prevail on a claim for fraudulent misrepresentation, the defendants must prove:

> "(1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." (*Fitzpatrick v. A C F Properties Group, Inc.* (1992), 231 Ill. App. 3d 690, 711, 595 N.E.2d 1327, 1341.)

In the instant case, Jameson, Jr., stated in his deposition testimony that Magna Bank's agent, Michael Kulier, made no false statements to anyone. Thus, a necessary element in order to succeed on a claim for fraudulent misrepresentation is lacking; hence, the trial court properly determined that, as a matter of law, the affirmative defense of fraudulent misrepresentation must fail.

■■ Accordingly, we believe that the court below correctly granted summary judgment. "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Siegel v. Levy Organization Development Co.* (1991), 219 Ill. App. 3d 579, 585, 579 N.E.2d 1112, 1116.) We conclude that no material issues of fact remained for the court's consideration; thus, entry of summary judgment was appropriate.

The judgment of the circuit court is affirmed.

Affirmed.

W.A. LEWIS and CHAPMAN, JJ., concur.