UNITED STATES of America,
Plaintiff,

v.

State of ILLINOIS, Defendant.

No. 01–3033.

United States District Court,
C.D. Illinois,
Springfield Division.

June 27, 2001.

Elizabeth L. Collins, Office of U.S. Attorney, Springfield, IL, for Plaintiff.

Jim Ryan, William E. Jarvis, Office of Attorney General, State of Illinois, Springfield, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

A valid contract must be enforced.

One who breaks a valid contract must honor the result.

Such is the case here.

## FACTS

In 1992 the United States Judicial Conference, through the Administrative Office of the United States Courts (the "Conference"), made a Criminal Justice Act grant of federal money to the State of Illinois for the Office of the State Appellate Defender (the "Appellate Defender"). The grant was to be used to provide legal services in federal death penalty habeas corpus cases.

A 1993 audit concluded that $35,787 of the grant funds had been used for obligations incurred outside the period of the grant or for purposes not allowed by the grant. As such, the Conference made a written demand to the Appellate Defender for $35,787 on December 1, 1993.

On March 20, 1995, the Appellate Defender wrote a letter to the Conference which stated "we are seeking funding to pay for [the] audit finding. [We] will keep you advised of the progress". The Appellate Defender again wrote to the Conference on August 27, 1999, stating that they have "asked the Illinois Legislature to provide funding to pay" the $35,787.

On January 31, 2001, the Conference—via the United States—filed suit against the State of Illinois for repayment of the Appellate Defender's debt. The Appellate Defender moves to dismiss the case, arguing that the United States did not file it before the applicable statute of limitations period expired. Further, the Appellate Defender argues that the United States is barred from pursuing the debt because the grant does not expressly allow the government to pursue a breach of contract claim in court.

## STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must accept well pleaded allegations of the complaint as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1104 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *See Car Carriers,* 745 F.2d at 1106. Dismissal should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Furthermore, the court must accept as true all well-pled allegations and draw all reasonable inferences in the plaintiff's favor. *See Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991).

## ANALYSIS

### A. Statute of Limitations

Title 28 U.S.C. § 2415(a) allows an agency of the United States to bring an action for money damages based on an express or implied contract provided it does within six years of the alleged breach. *See* 28 U.S.C. § 2415(a). However, this six-year statute of limitations is not absolute. Section 2415(a) provides that a cause of action re-accrues "in the event of later partial payment or written acknowledgment of debt". *See id.; see also, United States v. Rollinson,* 866 F.2d 1463, 1468 (D.C.Cir.), *cert. denied* 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989)("where a debtor unequivocally acknowledges and ev-

idences a sufficient commitment to pay a preexisting debt, the law will treat the acknowledgment as a new promise to pay").

In the instant case, a contract claim began to accrue in 1993 when the Conference learned of the Appellate Defender's alleged breach. The Conference could have taken immediate action against the Appellate Defender at that time, but it chose not to do so after the Appellate Defender provided letters on March 20, 1995, and August 27, 1999, stating that it was seeking funds to pay the $35,787 debt. Believing these letters to be written assurances of an intention to honor a debt, the Conference forestalled filing suit until January 31, 2001—more than six years after its breach of contract claim first accrued. The Appellate Defender contends that this delay is fatal to the Conference's claim.

The Court disagrees.

By sending the Conference the 1995 and 1999 letters, the Appellate Defender bought time and provided unequivocal written acknowledgments of its debt. *See, i.e., United States v. Culver,* 958 F.2d 39, 40 (4th Cir.1992)(finding a written acknowledgment to be created under § 2415(a) where a debtor listed a debt in a financial statement and then provided the statement to a creditor during settlement negotiations). The acknowledgments contained in the letters were new promises to pay the $35,787 debt. *See Rollinson,* 866 F.2d at 1468. A six-year statute of limitations started to run anew on the Appellate Defender's debt with each letter. The Appellate Defender sent the last of these letters on August 27, 1999—extending the Conference's filing deadline to August 27, 2005. The advantage that the letters bought—additional time—cannot be used as a means of escaping the obligation the letters expressed. The United States, by filing its claim against the Appellate De-

fender on January 31, 2001, has easily avoided any statute of limitations problem.

### B. Breach of Contract Claim

[■■■] Recognizing that its statute of limitations argument may not succeed, the Appellate Defender makes an alternative argument for dismissal based on the Conference's alleged agreement to forego a breach of contract remedy. Illinois law allows parties to limit their contractual rights and remedies by express agreement. *See Lake County Trust Company v. Two Bar B, Inc.,* 182 Ill.App.3d 186, 192, 130 Ill.Dec. 686, 537 N.E.2d 1015, 1019 (Ill.App.Ct.1989). When construing these agreements, a court must read the contract as a whole. *See Omnitrus Merging Corporation v. Illinois Tool Works, Inc.,* 256 Ill.App.3d 31, 34–35, 195 Ill.Dec. 701, 628 N.E.2d 1165, 1168 (Ill.App.Ct.1994). It can only dismiss a claim if the sole reasonable construction of the contract is that the parties intended for exclusive remedies to apply. *See id.* If such a construction does not clearly show that the parties intended to limit their remedies, the contract must be read to allow cumulative rather than exclusive remedies. *See Cordiant MN, Inc. v. David Cravit & Associates, Ltd.,* 1997 WL 534308, *8 (N.D.Ill.) (citing *Nitrin, Inc. v. Bethlehem Steel Corporation,* 35 Ill.App.3d 596, 606, 342 N.E.2d 79, 86 (Ill.App.Ct.1976)).

[■] The Appellate Defender contends that Paragraph 23 of the grant prohibits the Conference from pursuing a breach of contract claim. Paragraph 23 states as follows:

*Failure to comply with terms and conditions:* In the event the Grantee fails to comply substantially with any of the terms and conditions of the grant award set forth herein, or is unable to deliver the representation and other services which are the subject of this agreement,

the Conference, or its authorized representative, may reduce, suspend, or terminate, or disallow payments under this grant award as it deems appropriate. The Conference or its authorized representative shall give notice to the Grantee of an intent to reduce, suspend, or terminate payments on at least ten days prior to taking such action. Such notice shall indicate the intended actions and reasons therefore.

The Appellate Defender argues that this language should be read to limit the Conference's remedies to a reduction, suspension, termination, or disallowance of payments and prevent the Conference from pursuing a breach of contract claim. The Appellate Defender's argument is untenable both practically and legally speaking.

*First,* it is extremely unlikely that the Conference would intentionally fashion a grant that kept the right to reduce, suspend, terminate or disallow payments as its only remedies. Such a limited collection of remedies would allow a party like the Appellate Defender to spend grant money in any manner it pleased without affording the Conference an avenue for recovering misspent funds. Interpreting Paragraph 23 in the manner suggested by the Appellate Defender would allow for this absurdity. As a rule, courts should "construe contracts so as to avoid absurd results". *See Foxfield Realty, Inc. v. Kubala,* 287 Ill.App.3d 519, 524, 223 Ill.Dec. 52, 678 N.E.2d 1060, 1063 (1997). In keeping with this rule, the Court will not construe Paragraph 23 or the contract as a whole to limit the Conference's remedies.

*Second,* nothing in Paragraph 23 or the contract as a whole suggests that the parties intended to limit the Conference's rights to the aforementioned remedies. If the parties wished to limit the Conference's remedies, they could have easily included language to that effect. They did not. Absent such an express limitation, the Conference's remedial rights must be deemed cumulative and the breach of contract claim must be allowed to proceed. *See Nitrin,* 342 N.E.2d at 86.

*Ergo,* Defendant's Motion to Dismiss is DENIED.